**IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH**

**CENTRAL DIVISION**

| | |
|---|---|
| **FRAMED WALL ART, LLC,** | |
| Plaintiff, | **MEMORANDUM DECISION AND ORDER DENYING PRELIMINARY INJUNCTION** |
| vs. | |
| **PME HOLDINGS, LLC, PAUL EWING, and MELANIE EWING,** | **Case No.  2:08CV781DAK** |
| Defendants. | |

This matter is before the court on Plaintiff Framed Wall Art, LLC's Motion for Preliminary Injunction.  Plaintiff Framed Wall Art LLC ("FWA") seeks a preliminary injunction against Defendants PME Holdings, LLC, Paul Ewing, and Melanie Ewing, enjoining them from marketing and selling products that look similar to FWA's and confuse the public regarding the origin of the products.  The court expedited the briefing on the motion and allowed each side to conduct a deposition during the time period allowed for briefing.

The court held a hearing on the preliminary injunction motion on December 4, 2008.  At the hearing, Plaintiff was represented by Randall B. Bateman and Defendants were represented by L. David Griffin and H. Craig Hall.  The court took the preliminary injunction motion under

advisement.[1]  The court has carefully considered the memoranda, exhibits, declarations, and

other materials submitted by the parties, the arguments advanced by counsel at the hearing on the

motion, and the facts and law relevant to the motion.  Now being fully advised, the court renders

the following Memorandum Decision and Order.

## I.  BACKGROUND[2]

FWA sells framed art under the name of John Raymond Design that is based on existing

photographs, paintings, drawings, and other printed materials.  FWA antiques the image to make

it appear old.  The images are mainly religious and patriotic, but it has some scenic images on its

website.  The religious pieces consist primarily of temples of the Church of Jesus Christ of

Latter-day Saints and other well known art in the LDS community.  FWA also often includes a

script identifier of the subject which appears to be handwritten.  The art is framed in a heavy

antique looking frame.  The frames come in dark stain, light stain, distressed white, distressed

black, and cream glazed.  The purchaser can choose his or her desired color of frame.  FWA

states that its most popular frame color is black.  Several pieces of art can also be purchased as

unframed plaques on easels.  FWA has been selling its products for over three years.

Defendants were distributors of FWA products until December 2007.[3]  Prior to 2008,

---

[1]  At the hearing, the court ruled from the bench, denying Defendants' Motion to Strike Plaintiff's Reply Memorandum.

[2]  The court notes that the findings of fact and conclusions of law made by a court in deciding a preliminary injunction motion are not binding at the trial on the merits.  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *City of Chanute v. Williams Natural Gas Co.*, 955 F.2d 641, 649 (10th Cir. 1992), *overruled on other grounds, Systemcare, Inc. v. Wang Labs Corp.,* 117 F.3d 1137 (10th Cir. 1997) (recognizing that "the district court is not bound by its prior factual findings determined in a preliminary injunction hearing.").

[3]  FWA informed Defendants that they were no longer permitted to sell, distribute, or otherwise deal in FWA's products on several occasions after December 2007, including a letter dated April 16, 2008.  By December 2007, FWA claims that Defendants owed FWA over

Defendants did not sell any of their own art.  Defendants sold only art from FWA.  However,

Defendants assert that they sold FWA's art under their culturalhall.com mark without reference

to John Raymond or his companies.  FWA contends that Defendants were instructing their

employees to remove FWA labels on products that were shipped to Defendants. Defendants

claim that FWA knew its products were being sold in that fashion and FWA did not consistently

label its product sent to it or to other distributors, such as Deseret Book.

     In March 2008, Defendants began selling its own framed art similar to FWA's products at

periodic shows hosted at various Costco locations throughout Utah and the Intermountain West,

and on their website www.culturalhall.com.  Defendants began using these channels of

distribution when they previously sold FWA's products and have continued those same channels

of distribution with their own product.  FWA sells its products through the internet at

www.raymonddesigns..com, shows at venues such as Sam's Club, through distributors, and

through retail outlets such as Deseret Book.

     Defendants' product line includes many of the same LDS-based subjects as FWA.

Defendants have obtained a license from Del Parsons, one of the LDS artists who allows FWA to

antique his art.  Defendants also include antique-style descriptions on the products that look like

they have been hand-written.  In addition, Defendants use a similar heavy wood frame that comes

---

$300,000 for product delivered to Defendants and it revoked Defendants license to sell FWA
products.  Defendants contest that it owed FWA any money in December 2007.  In January 2008,
FWA contacted Costco and told it that Defendants would no longer be a distributor of FWA's
product.  FWA claims that Defendants were so angered by this contact with Costco that
Defendants refused to make any more payments.

     In March 2008, Defendants negotiated a $265,000 promissory note with FWA, payable in
twelve one-month installments.  FWA asserts that the promissory note was a settlement of the
debt Defendants owed to it.  But Defendants contend that there is no evidentiary support for the
underlying reason for the promissory note.  FWA claims that Defendants are in default of the
payments under the promissory note.

in assorted dark and light stains as well as black and white.

FWA asserts that its products have a unique look and feel and consumers recognize the distinct look as originating from FWA.  FWA alleges that Defendants have copied its products' "look and feel."  The parties agree that they use a different process to antique the pictures which results in a slightly different coloring.  However, the differences are quite minor and would be hard to tell over the internet or in a retail setting without both products side-by-side.

Defendants assert that the product is not distinctive and the process of antiquing a photograph or piece of art is simple enough for anyone to do using a computer.  Defendants point the court to CedarFort.com, which sells antiqued pictures of LDS temples.  The products on the CedarFort.com website have a similar look, similar heavy wood frame, and a similar old-style description that looks handwritten.  The products on CedarFort.com come in several different sizes framed and a smaller unframed version on an easel.  FWA stated at the hearing that it has no problem with the products from CedarFort.com.

FWA claims that members of the public have been confused as to the origin of the framed art and it has received communications from Defendants' customers requesting FWA to fulfill orders made through Defendants.  FWA contends that this kind of confusion associated with poor customer service is hurting the goodwill and reputation that it has been building over the past three years.  FWA alleges that Defendants' framed art is of inferior quality, but it is not obvious through only a cursory examination.  Defendants dispute that their product is inferior or that it was returned for issues with quality any more frequently than FWA's product.

FWA states that it also started receiving inquiries from customers who stated that they had seen its products at Costco.  Because FWA no longer sell its products at Costco and Defendants do, FWA asserts that these inquiries demonstrate actual confusion in the marketplace

4

regarding the source of the products.  FWA also claims that its sales have been down since

Defendants started selling similar products.

## DISCUSSION

### FWA's Motion for Preliminary Injunction

FWA moves, pursuant to Rule 65 of the Federal Rules of Civil Procedure, for an order

preliminarily enjoining Defendants from marketing and selling antiqued framed art that looks

similar to its own product.  In this action, FWA asserts a trade dress infringement claim under

Section 43 of the Lanham Act, a deceptive trade practices claim under Utah Code Annotated

Section 13-11a-3(1), and an unfair competition claim under Utah common law.

In order to obtain preliminary injunctive relief, the moving party must establish:

> (1) a substantial likelihood of success on the merits; (2) irreparable
> harm to the movant if the injunction is denied; (3) [that] the
> threatened injury outweighs the harm that the preliminary
> injunction may cause the opposing party; and (4) [that] the
> injunction, if issued, will not adversely affect the public interest.

*General Motors Corp. v. Urban Gorilla, LLC,* 500 F.3d 1222, 1226 (10th Cir. 2007); *SCFC ILC,*

*Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991).

"Because a preliminary injunction is an extraordinary remedy, the right to relief must be

clear and unequivocal."  *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1256 (10th Cir.

2003).  In this case, FWA seeks a preliminary injunction that is "specifically disfavored" because

it would alter the status quo.  *O Centro Espirita Beneficente Uniao Do Vegetal v. Ashcroft*, 389

F. 3d 973, 975 (10th Cir. 2004).  Such an injunction faces a "heightened burden."  *Id.*  FWA,

therefore, is "not entitled to rely on this Circuit's modified-likelihood-of-success-on-the-merits

standard," but "must make a strong showing both with regard to the likelihood of success on the

merits and with regard to the balance of harms."  *Id.* at 976.

**A.  Likelihood of Success on the Merits**

In order to obtain injunctive relief, FWA must demonstrate a likelihood of success on the merits on at least one of its three claims for relief.  Because the parties have made the same arguments for FWA's state deceptive trade practices claim[4] and common law unfair competition claim[5] as they have made for FWA's trade dress infringement claim under the Lanham Act, the court will analyze the Lanham Act trade dress claim first and apply those conclusions to the remaining claims.

**A.  Trade Dress Infringement Claim**

FWA argues that it will likely prevail on its trade dress claim because of the obvious and striking similarities between the products.  FWA alleges that the "look and feel" of its product line constitute protectable trade dress.  Defendants, however, contend that FWA must specifically identify what particular elements or attributes comprise the "look and feel" of its products in order to obtain trade dress protection.  Defendants argue that FWA's avoidance of the distinctiveness of its product is fatal to FWA's request for a preliminary injunction.

Section 43 of the Lanham Act provides protection against the use of "any word, term, name, symbol, or device" that "is likely to cause confusion, or to cause mistake, or to deceive" as

---

[4]    Utah has defined deceptive trade practices as occurring when someone "(a) passes off goods or services as those of another; (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods and services; [or] (c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another."  Utah Code Ann. § 13-11a-3(1).

[5]    The Utah Supreme Court has recognized that unfair competition occurs when someone imitates through "some device or designation the wares made and sold by another for the purpose of palming off or substituting his wares for those of another" and in that way misleads "the purchaser by inducing him to buy the wares made and sold by the first instead of those by the second."  *Overstock.com, Inc. v. Smartbargains, Inc.*, 2008 UT 55 ¶ 13.

to the source of a product.  15 U.S.C. § 1125(a).  "'Although historically trade dress infringement

consisted of copying a product's packaging, . . . "trade dress" in its more modern sense [may]

refer to the appearance of the [product] itself."  *Hartford House, Ltd. v. Hallmark Cards, Inc.*,

846 F.2d 1268, 1271 (10th Cir. 1988).  Thus, courts recognize trade dress claims based both on

product packaging and on "product design/configuration."  *Wal-Mart Stores, v. Samara Bros.,*

*Inc.*, 529 U.S. 205, 213-14 (2000).

> "A product's trade dress is eligible for protection under Section 43(a) if it is so distinctive

as to become, in effect, an unregistered trademark."  *Hartford House Ltd. v. Hallmark Cards*

*Inc.*, 846 F.2d 1268, 1271 (10th Cir. 1988).  The Tenth Circuit has held that  "[t]o establish a

claim of trade dress infringement, a plaintiff must show: (1) the trade dress is inherently

distinctive or has become distinctive through secondary meaning; (2) there is a likelihood of

confusion among consumers as to the source of the competing products; and (3) the trade dress is

non-functional.  *General Motors Corp. v. Urban Gorilla*, *LLC*, 500 F.3d 1222, 1227 (10th Cir.

2007).

> *1. Distinctiveness of Trade Dress*

FWA seeks trade dress protection for the "look and feel" of its entire line of products.

FWA does not claim that any specific element of its framed art is distinctive.  Rather, it claims

that the combination of elements it uses makes the product line unique and recognizable to

consumers.  FWA does not seek protection for the process of antiquing the images, and it

acknowledges that the antiquing process used by Defendants is different than its process.

> The Tenth Circuit has explained that "[t]rade dress is a complex composite of features.

One may be size, another may be color or color combinations, another may be texture, another

may be graphics and arrangement and so on."  *Hartford House*, 846 F.2d at 1271.  In other

words, trade dress is "a certain arrangement or combination of features which creates the overall uniform appearance, look, and image of [a company's products]." *Id.* at 1274.

Courts "recognize that there is no question that trade dress may protect the 'overall look' of a product." *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir. 1997). "'Although each element of a trade dress individually might not be inherently distinctive, . . . the combination of elements' may be indicative of source." *Id.* (citation omitted).

But, as in *Walt Disney Co. v. Goodtimes Home Video Corp.*, 830 F. Supp. 762 (S.D.N.Y. 1993), where Disney was claiming trade dress protection for a line of videocassette packages, FWA's "claim differs from most trade dress claims in that the alleged trade dress is not a specific package or the appearance of a single product, but rather the overall look of a number of different packages." *Id.* at 766. The *Disney* court recognized that the result of such a claim created "a burden which most plaintiffs alleging trade dress infringement do not need to carry." *Id.* The court required Disney to establish "the existence of a recognizable trade dress" by demonstrating that the packages had "a consistent overall look." *Id.*

In this case, Defendants argue that FWA fails to adequately define what characteristics constitute the alleged distinctive look and feel of FWA's products. As in *Disney*, it is necessary for FWA to show that a combination of features gives its products a distinctive and consistent overall look. In *Hartford House*, the Tenth Circuit affirmed the grant of a preliminary injunction with respect to the overall "look and feel" of a line of greeting cards. 846 F.2d at 1275. The district court in that case had listed ten characteristics that comprised the distinctive look. While the court did not evaluate each feature comprising the overall trade dress, the Tenth Circuit noted that "[i]nasmuch as the district court specifically listed the combination of features that comprise [the plaintiff]'s trade dress, [the defendant] is guided as to what features combined may create a

confusingly similar product." *Id.* at 1274-75.   Moreover, the *Hartford House* court recognized

that the preliminary injunction was limited to 83 specific cards that the district court viewed as so

similar that they would likely cause confusion.  *Id.* at 1274 n.5.

     In this case, FWA identifies its trade dress as (1) distressing a picture or piece of art to

make it look old, (2) adding descriptive script appearing to be handwritten, and (3) combining

this with a heavy, antique frame.  FWA argues that when you look at all of the elements as a

whole, its product is distinctive.  Defendants, however, contend that such a trade dress is simply

the description of the generic style of antiquing a picture.

     With respect to whether the trade dress is distinctive, trade dress is classified as (1)

generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful.  *Jeffrey Milstein Inc v. Lawlor,*

*Roth, Inc.* 58 F.3d 27, 31 (2d Cir. 1995).  Any trade dress found to be arbitrary or fanciful "is

considered to be inherently distinctive."  *Id.* at 31-32.  In contrast, generic dresses-- 'those that

refer to the genus of which the particular product is a species" -- are never protectable."  *Id.* at 32.

"If a dress is descriptive, however, the Plaintiff must establish that it has acquired secondary

meaning in order to become distinctive."  *Id.*

     While the combination of elements and not simply the individual elements "should be the

focus of the distinctiveness inquiry," "the fact that a trade dress is composed exclusively of

commonly used or functional elements might suggest that the dress should be regarded as

unprotectable or 'generic' to avoid tying up a product or marketing idea."  *Id.*  "In reality the

question is whether the dress is so unique, unusual or unexpected in this market that it will

automatically be perceived by customers as an indicator of origin."  *Yankee Candle Co. v. The*

*Bridgewater Candle Co.*, 259 F.3d 25, 42 (1ˢᵗ Cir. 2001).

     Defendants contend that the process of antiquing a picture is commonly taught on the

internet. As such, the design of distressing a picture is common and not unusual.  In addition, John Raymond admitted that outside the LDS community, he did not know whether stylized and antiqued pictures were unique to FWA.  He also admitted to being aware of a company, known as Cedar Fort, who sells LDS temple pictures with the same kind of look and idea as his temple pictures.

Where a plaintiff "does not have exclusive rights" to a specific artistic technique, it "cannot claim a monopoly in the results of these . . . techniques."  *Walt Disney*, 830 F. Supp. at 769.  The Tenth Circuit has also recognized that a party does not have "exclusive rights in an artistic style or in some concept, idea, or theme of expression."  *Hartford House*, 846 F.2d at 1274  "If the law protected style at such a level of abstraction, Braque might have prevented Picasso from selling cubist paintings in the United States."  *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 382 (2d Cir. 1997).

The *Hartford House* court stated that the issue "turns on whether protection of the combination would hinder competition or impinge upon the rights of others to compete effectively."  846 F.2d at 1273.  "In this respect, . . . '[s]ince the effect upon competition "is really the crux of the matter," it is of course significant that there are other alternatives available.'"  *Id.* (citation omitted).  In *Hartford House*, the court noted that there "are infinite alternative designs available."  *Id.*

In this case, Defendants contend that, unlike *Hartford House*, there are not infinite alternatives for selling antiqued LDS images, and FWA should not be given a monopoly over a style.  Many different websites have detailed information on how to antique images using commercially available software.  The process is easily accomplished and has been done for many years.  The prominent artist Del Parsons, who has given permission to John Raymond and

Defendants to antique several of his artistic images, provided a declaration stating that FWA's style of art is not unique.  He stated that "there is nothing unique about what FWA does with its products that are styled in such [an antique] fashion."

Defendants point to the similarities between the parties' products and those available from CedarFort.com.  The parties dispute whether FWA's art is distinguishable from the antiqued temple pictures available on CedarFort.com.  FWA states that it is not concerned with the similarities between its work and the work on CedarFort.com.  However, the Cedar Fort pictures are antiqued, of LDS subject matter, with script appearing to be handwritten identifying the subject, and a heavy frame.  And, similar to FWA, the products on CedarFort.com come framed and unframed on an easel.  Although FWA asserts that Cedar Fort's proportions are different, they come in a variety of sizes as do FWA's.

FWA alleges that, unlike Cedar Fort, Defendants have used the same proportions for their pictures.  There are several similar proportions in the two product lines, and the long, rectangular, landscape pictures appear nearly identical in proportion.  The court notes, however, that FWA's website contains pictures of temples that are vertical as well.  Defendants do not offer similar vertical pictures.  Cedar Fort, however, does offer vertical pictures, and FWA does not allege trade dress infringement against Cedar Fort.

FWA has also failed to demonstrate that its trade dress has consistency and uniformity. Raymond testified that he does the antiquing depending on how he wants it to look on any given picture.  Thus FWA does not use a consistent method of antiquing. FWA also sells its art in five different frame colors.  The frames are heavy wooded frames and come in colors and stains that are currently popular.  The interactive nature of FWA's website allows the customer to choose the frame he or she wants on the picture.  FWA has not specifically selected a frame that must be

used on any given picture.  Allowing a customer to choose his or her own frame does not lend itself to a finding that FWA has developed a unique or uniformly distinctive look.  The style of the frame is one that is currently popular.  They look like frames for purchase at popular retail stores like Pottery Barn.  In fact, FWA has used room pictures from Pottery Barn catalogs on its website to display its work.  The frames are not unique or distinctive.

The products sold by FWA, Cedar Fort, and Defendants all appear remarkably similar. While the court is troubled by the similarities between FWA and Defendants given their history of working together, the court cannot conceive of how it would fashion an injunction against Defendants that would not prohibit them from doing the same thing that Cedar Fort is also doing. Unlike the court in *Harford House*, which was able to give guidance to the Defendants, this court could not fashion an injunction that would allow Defendants to effectively compete in the market.  "[W]hen protection is sought for an entire line of products, our concern for protecting competition is acute."  *Landscape Forms*, 113 F.3d at 380.  In this case, FWA has not articulated or supported its claimed trade dress with sufficient particularity.  The trade dress claimed by FWA is so broad that it would effectively monopolize the market.

If a trade dress is not inherently distinctive, it may become distinctive if it acquires "secondary meaning."  *See Beer Nuts, Inc. v. Clover Club Foods Co.*, 711 F.2d 934, 940 (10th Cir. 1983).  "To establish secondary meaning, it is not necessary to show that the public is aware of the name of the manufacturer of a product; it is sufficient if the public is aware that the product comes from a single, though anonymous source."  *Id.*  However, there are vigorous evidentiary requirements to prove a secondary meaning.  *Yankee Candle*, 259 F.3d at 43. FWA's work is not inherently distinctive because others in the market are already doing this very process.  As the products on CedarFort.com demonstrate, the idea or theme of FWA's products is

a common design.

While there is evidence in the record that some consumers have contacted FWA regarding Defendants products, there is no evidence that the individual consumers associate the particular features of FWA's work with it. FWA provided evidence from people who know John Raymond personally rather than average consumers. FWA also presented a factual situation where a consumer saw FWA's products at Deseret Book and contacted it because it thought that it was the same work it had seen at Costco. That type of factual scenario does not demonstrate that FWA's products are so distinctive that the average consumer associates Defendants' products with FWA when they see it. It only demonstrates that a consumer was attempting to locate the company. There is no dispute that the work would appear similar to consumers, especially when it is not compared side-by-side.

The evidence shows that when Defendants sold Raymond's products, they did so with their own Culturalhall.com stickers on them. The parties dispute whether there was an agreement to do so. The parties also dispute how well FWA's art is labeled. Defendants submitted testimony from Anita Ault stating that less than 18% of the John Raymond print products at several Deseret Book stores have any sticker or indication that they originated with FWA or any group associated with John Raymond. The failure to consistently mark the product demonstrates that many customers would have no means of identifying from whom the pictures originated. Given that at least CedarFort.com also offers similar styled pictures for sale, the court cannot conclude that FWA has demonstrated that its trade dress has acquired secondary meaning.

FWA contends that "evidence of intentional direct copying establishes a prima facie case of secondary meaning sufficient to shift the burden of persuasion to the defendant on that issue." *M. Kramer MFG. Co. v. Andrews*, 783 F.2d 421, 448 (4th Cir. 1986). This principle, however, is

13

not supported by the evidence in this case.  FWA acknowledges that Defendants employed

Mikell Johnson, who developed his own process for antiquing images.  That process results in

different color variations.  The angles of the temples also differ on the pictures.  And, the frame

style is not a not a direct copy.  The evidence demonstrates that Defendants began directly

competing with FWA and producing art similar to both FWA and Cedar Fort.  But there is no

evidence that Defendants have directly copied anything distinctive to FWA.

In order to state a claim for trade dress infringement, a plaintiff must demonstrate that its

trade dress is distinctive, either inherently or through secondary meaning.  *Wal-Mart Stores, Inc.*

*v. Samara Bros., Inc.*, 529 U.S. 205, 210 (2000).  "[C]ourts have universally imposed th[is]

requirement, since without distinctiveness the trade dress would not 'cause confusion . . . as to

the origin, sponsorship, or approval of the goods,' as [Section 43] requires."  *Id.*  Given that the

evidence presented does not support a determination that FWA has met the strong showing

necessary to prove distinctiveness, FWA's Motion for Preliminary Injunction is denied.

2.  *Likelihood of Confusion*

Because of the court's conclusions with respect to distinctiveness, the court need not

consider any other element in the trade dress infringement claim or the remaining factors

required for injunctive relief.  *See Landscape Forms*, 113 F.3d 382 ("In light of our conclusion

above [regarding distinctiveness], we do not need to address the district court's likelihood of

confusion analysis to resolve the Lanham Act claim.")

However, even if this court were to address the issue of confusion for purposes of FWA's

trade dress infringement or state law claims, the court similarly concludes that FWA cannot meet

the heightened burden required.   The factors to be considered in determining likelihood of

confusion were summarized by the Tenth Circuit in *King of the Mountain Sorts, Inc. v. Chrysler*

*Corp.*, 185 F.3d 1084 (10th Cir. 1999):  "(a) the degree of similarity between the marks; (b) the intent of the alleged infringer in adopting its mark; (c) evidence of actual confusion; (d) the relation in use and the manner of marketing between the goods or services marketed by the competing parties; (e) the degree of care likely to be exercised by purchasers; and (f) the strength or weakness of the marks. *Id.* at 1089-90.

The court has already concluded that the look and feel of FWA's product line is not distinctive.  There are differences in the artistic style, but to the extent that there are similarities, the artistic style is not protectable.  While the court has expressed that it is troubled by the intent of Defendants, the parties agree that FWA does not use the same process as FWA.  Moreover, FWA could have protected itself from such direct competition in its distributor agreement with Defendants.

In addition, the court has already concluded that FWA's declarations and emails regarding consumer confusion are not sufficient.  The declarations are from people who know Raymond personally and cannot be considered an average consumer.  And, the emails relied on by FWA do not provide a time frame.  Defendants previously sold FWA's work.  The fact that some consumers knew that and may assume that this association continues is simply not evidence that they are confused because of trade dress.

The issue with respect to labeling also undercuts a finding of consumer confusion.  Defendants have raised questions as to FWA's consistency in labeling its work, which also impacts a finding of actual confusion and the strength of FWA's mark.  FWA, however, has not claimed that Defendants are failing to mark its products.  The evidence before the court is that Defendants are labeling their products and, thus, clearly identifying Culturalhall.com as the source of the products.  Moreover, the marketing and trade channels of the two companies

overlap, but there is evidence that Defendants began selling at occasional art shows at Costco before FWA began using such sales techniques.

Accordingly, the court concludes that FWA has not made the requisite strong showing for demonstrating a likelihood of confusion under its trade dress infringement claim.  The parties did not rely on any separate arguments with respect to FWA's state law claims.  Accordingly, the court finds no basis for issuing a preliminary injunction on either of the state law claims.

## CONCLUSION

For the foregoing reasons, Plaintiff Framed Wall Art, LLC,'s Motion for Preliminary Injunction is DENIED.  The court concludes that Plaintiff has not met its heightened burden of demonstrating a likelihood of success on the merits of its claims.

DATED this 12th day of December, 2008.

BY THE COURT:

DALE A. KIMBALL
United States District Judge

16